UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TONIA E. FISHER, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 07-CV-0433-CVE-SAJ |
| ) | |
| SOUTHWESTERN BELL TELEPHONE ) | |
| COMPANY and AT&T INC., ) | |
| ) | |
| **Defendants.** ) | |

## OPINION AND ORDER

Now before the Court are Southwestern Bell Telephone Company's Motion to Dismiss Pursuant to Rule 12(b)(1) and Brief in Support (Dkt. # 31) and the Motion to Dismiss by Defendant AT&T Inc. and Brief in Support (Dkt. # 45).

**I.**

Tonia Fisher alleges that she was hired by Southwestern Bell Telephone Company ("Southwestern Bell") as a technician in June 1997. In November 2002, Fisher was charged with driving under the influence of alcohol and, even though this did not occur during the scope of her employment, she reported the incident to Southwestern Bell. She claims that the charge was subsequently dismissed but Southwestern Bell suspended her for four months without pay based on the incident. She alleges that, during her four month suspension, a male employee of Southwestern Bell was charged with driving under the influence and carrying a loaded firearm. She claims that the male employee was not suspended and, in fact, he was promoted.

Fisher returned to work in April 2003 and claims that she was subject to heavy scrutiny from her managers. She characterizes her treatment as harassment and claims that this harassment caused

her to become seriously ill. In August 2005, Fisher took approved medical disability leave. Although she was approved for medical leave, she claims that she was concerned about her job security because Southwestern Bell would not provide a specific release date for her medical leave. Fisher's physician cleared her to return to work with restrictions, but she claims that Southwestern Bell refused to provide an accommodation that would allow her to resume her former position as a technician. She states that she returned to work in August 2006 under a 60 day restriction, but that she would be required to perform all of her former duties after the 60 day period expired. Fisher alleges that, on October 19, 2006, her supervisor ordered her to report to Oklahoma City for new employee safety training. This training involved a significant physical component, including tests of plaintiff's pole-climbing ability, and she asserts that she was unable to perform this training due to her physical limitations.

Fisher believed that her supervisor's order to undergo safety training constituted harassment on the grounds of gender and disability. She refused to attend the safety training because she claimed that Southwestern Bell was discriminating against her. On October 23, 2006, Southwestern Bell suspended Fisher without pay. Southwestern Bell renewed its request for Fisher to complete new employee safety training and she refused. Fisher was fired on November 7, 2006 for insubordination. She filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 5, 2006. The charge of discrimination, in full, stated:

I.   I have been employed with AT&T since on or about June 2, 1997. On or about August 27, 2005, I became ill and was hospitalized. I remained off work, under a physician's care, until I returned to work on or about August 21, 2006. On or about October 19, 2006, I was informed by my supervisor, Torina Johnson, that I would be required report to Oklahoma City on October 23, 2006, to re-test my pole climbing ability, after successfully completing that program and successfully performing this job without incident for nine years. I am being treated to different terms and conditions of employment than male employee [sic] who are not required

2

>    to re-test pole climbing. I had also been told by Curtis James, Area Manager, that I would not have to re-test as I was already qualified. On or about October 23, 2006, my employment was suspended. On or about November 7, 2006, my employment was terminated.
>
> II.    No reason has been given for the different terms and conditions of employment, in that I am being re-tested and male employees are not required to re-test. The reason given for my suspension was an investigation would be conducted because I did not go to OKC to re-test. The reason given for my termination was insubordination.
>
> III.   I believe I have been discriminated against because of my gender, female, in violation of Title VII of the Civil Rights Act of 1964, as amended, and because of being regarded as disabled, in violation of the Americans with Disabilities Act of 1990, as amended.

Dkt. # 35, Ex. 1. She alleged that she was treated differently than male employees, because male employees were not required to re-test for pole climbing. Fisher alleged that this constituted gender discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"). She further alleged that she was regarded as disabled for purposes of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), and Southwestern Bell discriminated against her because it regarded her as disabled. The charge did not mention any events occurring before August 27, 2005.

Fisher filed this lawsuit against AT&T Corp. on August 8, 2007, alleging gender discrimination, disability discrimination, and retaliation. Dkt. # 2. Fisher's gender discrimination claim referenced her 2002 suspension and included language suggesting that she was subject to harassment. Dkt. # 2, at 4-5. AT&T Corp. filed a motion to dismiss asserting that it was not Fisher's employer, and Fisher conceded that she had sued the wrong party. The Court permitted plaintiff to file an amended complaint naming AT&T Inc. ("AT&T") and Southwestern Bell as defendants.

**II.**

AT&T has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and (b)(6). See Dkt. # 45. AT&T argues that it does not have sufficient minimum contacts with Oklahoma to permit the Court to exercise personal jurisdiction over it. AT&T also asserts that it was not plaintiff's employer and it is not liable to plaintiff under Title VII or the ADA.

**A.**

Plaintiff bears the burden of establishing that the Court has personal jurisdiction over each defendant. OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998). "When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, . . . the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." Id. (citations omitted). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." Id. at 1091. "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)). The allegations of the complaint must be accepted at true to the extent they are uncontroverted by the defendant's affidavit. Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1990). If the parties provide conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor and a prima facie showing of personal jurisdiction is sufficient to overcome defendant's objection. Id.

To demonstrate the existence of personal jurisdiction over a nonresident defendant in a diversity action, plaintiff must demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the United States Constitution. See OKLA.

4

STAT. tit. 12, § 2004(F).  "Because Oklahoma's long-arm statute permits the exercise of jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000) (citing Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1416 (10th Cir. 1988)); see also Hough v. Leonard, 867 P.2d 438, 442 (Okla. 1993).

"Due process requires that the nonresident defendant's conduct and connection with the forum state are such that the nonresident could reasonably anticipate being haled into court in that state."  Conoco, Inc. v. Agrico Chem. Co., 115 P.3d 829, 835 (Okla. 2004) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).  "The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum contacts between the defendant and the forum State.'"  Intercon, 205 F.3d at 1247  (quoting World-Wide Volkswagen, 444 U.S. at 291).  The existence of such minimum contacts must be shown to support the exercise of either general jurisdiction or specific jurisdiction.  A court "may, consistent with due process, assert specific jurisdiction over a nonresident defendant 'if the defendant has purposefully directed his activities at the residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'"  Intercon, 205 F.3d at 1247 (quoting Burger King, 471 U.S. at 472).  "When a plaintiff's cause of action does not arise directly from a defendant's forum related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state." Intercon, 205 F.3d at 1247 (citing Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-16 & n.9 (1984)).

**B.**

AT&T is a holding company incorporated in Delaware with its principal place of business in San Antonio, Texas, and it is the parent company of Southwestern Bell. The general rule is that a "holding or parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity." Benton v. Cameco Corp., 375 F.3d 1070, 1081 (10th Cir. 2004) (quoting Quarles v. Fuqua Indus., Inc., 504 F.2d 1358, 1362 (10th Cir. 1974)). The Court may not consider the activities of Southwestern Bell when determining if it has personal jurisdiction over AT&T. Id. at 1081. AT&T has submitted the affidavits of Thomas Koch ("Koch"), a controller in the finance department of AT&T Services, Inc., and Charles A. Ciskowski ("Ciskowski"), Director of Network Services for Southwestern Bell. Koch states that AT&T is a legally distinct entity from its subsidiaries, including Southwestern Bell, and it does not conduct business or maintain any presence in Oklahoma. Dkt. # 45, Ex. A, at 2. AT&T has officers and a board of directors, but it does not have employees in Oklahoma or anywhere else. Id. at 3. Koch believes that Southwestern Bell was plaintiff's employer. Ciskowski states that he reviewed Southwestern Bell's corporate and business records, and determined that plaintiff was an employee of Southwestern Bell. Id, Ex. B, at 1. He states that AT&T has no control over Southwestern Bell's day-to-day business operations or employment decisions, and AT&T had no part in the employment decisions giving rise to this lawsuit. Id.

The burden is on plaintiff to make a prima facie case establishing this Court's personal jurisdiction over AT&T. Cory v. Aztec Steel Bldg., Inc., 468 F.3d 1226 (10th Cir. 2006); Doe v. National Medical Servs., 974 F.2d 143, 145 (10th Cir. 1992). Plaintiff argues that AT&T waived its defense based on the lack of personal jurisdiction by entering an appearance in this case and it has submitted itself to the jurisdiction of this Court. Plaintiff has cited no authority supporting her

6

argument and, in fact, plaintiff's statement is incorrect. The defense of lack of personal jurisdiction is waived only in the circumstances listed in Rule 12(h)(1). Lack of personal jurisdiction is not waived if raised in a motion under Rule 12. See Fed. R. Civ. P. 12(h)(1)(B)(i); see also United States v. 51 Pieces of Real Property Roswell, New Mexico, 17 F.3d 1306 (10th Cir. 1994) (entering an appearance and filing a timely objection to a court's exercise of personal jurisdiction are not "defensive moves" that subject a party to a court's jurisdiction); Springer v. Balough, 96 F. Supp. 2d 1250, 1256 (N.D. Okla. 2000) (defendant did not waive a personal jurisdiction defense by entering an appearance and filing pre-answer motion to dismiss for lack of personal jurisdiction). Because AT&T has not waived this defense, plaintiff must make a prima facie case establishing this Court's personal jurisdiction over AT&T.

Plaintiff argues that even one contact with Oklahoma may be sufficient for the Court to exercise personal jurisdiction over AT&T, and the Court will construe this as an argument that the Court has specific jurisdiction over AT&T. She has provided evidence that the CEO of AT&T, Randall Stephenson, has accepted a speaking engagement at the Mid-America Regulatory Conference Energy Roundup 2008 in Oklahoma City, Oklahoma.[1] Dkt. # 49, Ex. 2. This does not show that AT&T has sufficient minimum contacts with Oklahoma to satisfy Oklahoma's long-arm statute or the Due Process Clause of the Fourteenth Amendment. Specific jurisdiction is appropriate only if "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." AST Sports Science, Inc. v. CLF Distribution Ltd., 514 F.3d 1054, 1058 (10th Cir. 2008) (quoting Benton, 375 F.3d at 1075). The Court may not exercise personal jurisdiction over AT&T simply because its CEO accepts a speaking engagement in Oklahoma. This activity is completely unrelated to the

---

[1]     The Court notes that the speaking engagement will not occur until June 18, 2008.

7

events alleged in plaintiff's amended complaint and does not support the exercise of specific personal jurisdiction over AT&T. Plaintiff has also produced evidence that AT&T and Southwestern Bell submitted a joint application to the Federal Communications Commission in 1997. Dkt. # 49, Exs. 3, 4.  However, this evidence does not create an inference that AT&T exercised control over the day-to-day operations of Southwestern and it certainly does not show that AT&T purposefully directed any activities towards Oklahoma.

The Court finds that it lacks personal jurisdiction over AT&T, and AT&T's motion to dismiss pursuant to Rule 12(b)(2) should be granted.[2]  Plaintiff has not made a prima facie showing that AT&T has sufficient minimum contacts with Oklahoma to satisfy the Due Process Clause of the United States Constitution.  AT&T is a holding company with its principal place of business in Texas and it is incorporated in Delaware.  AT&T has presented affidavits supporting its assertion that it does not conduct business in Oklahoma and that it does not have any specific contact with Oklahoma related to plaintiff's lawsuit.  Plaintiff's assertion that AT&T and its subsidiaries have a national presence does not show that AT&T has purposefully directed its activities toward

---

[2]   AT&T also argues that it was not plaintiff's employer and can not be held liable to plaintiff under Title VII or the ADA.  Plaintiff does not address this argument in her response.  See Dkt. # 48.  As part of her prima facie case under Title VII, plaintiff must prove that the defendant was her employer.  Franks v. U.S. West, Inc., 3 F.3d 1357 (10th Cir. 1993).  Because the Court lacks personal jurisdiction over AT&T, it declines to address this issue.  However, it appears that this would be an alternative basis to dismiss AT&T as a party to this case, because plaintiff has produced no evidence suggesting that AT&T should be treated as her employer for purposes of Title VII or the ADA.

Oklahoma or that AT&T's general contacts with Oklahoma, unrelated to this lawsuit, are sufficient to support the exercise of personal jurisdiction over AT&T.[3]

### III.

Southwestern Bell asks the Court to dismiss plaintiff's claims of gender discrimination under Title VII to the extent it based on events that occurred in 2002 and her retaliation claims under Title VII and the ADA, because she did not exhaust her administrative remedies for these claims.[4] Plaintiff responds that the Court has subject matter jurisdiction over all over her claims, because she exhausted her administrative remedies by filing a timely charge with the EEOC on December 5, 2006.

### A.

Pursuant to Fed. R. Civ. P. 12(b)(1), defendant has moved to partially dismiss plaintiff's employment discrimination claims for lack of subject matter jurisdiction. When considering a motion to dismiss under Rule 12(b)(1), the Court must determine whether the defendant is facially attacking the complaint or challenging the jurisdictional facts alleged by the plaintiff. In Holt v. United States, 46 F.3d 1000 (10th Cir. 1995), the Tenth Circuit stated:

---

[3]     Plaintiff asserts that she should be permitted to conduct discovery before the Court considers AT&T's motion to dismiss for lack of personal jurisdiction. Dkt. # 48, at 1. Refusal to grant jurisdictional discovery constitutes an abuse of discretion only if "pertinent facts bearing on the question of jurisdiction are controverted . . . or a more satisfactory showing of the facts is necessary." Sizova v. Nat'l Inst. of Standards & Technology, 282 F.3d 1320, 1326 (10th Cir. 2002). Plaintiff has not identified any jurisdictional facts in dispute and it is unlikely that discovery on jurisdictional issues would show that the Court has personal jurisdiction over AT&T. See Bell Helicopter Textron, Inc. v. Heliquest Int'l, Ltd., 385 F.3d 1291, 1299 (10th Cir. 2004). (denial of jurisdictional discovery is not an abuse of discretion when there is a low probability that discovery would affect the outcome of a Rule 12(b)(2) motion). Therefore, her request for jurisdictional discovery is denied.

[4]     Southwestern Bell does not request dismissal of plaintiff's Title VII or ADA claims based on its allegedly discriminatory practice of requiring plaintiff to take a pole-climbing test in October 2006.

9

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. . . . In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

Id. at 1002-03. Defendant has cited evidence outside of the pleadings and the Court will construe defendant's motion as a factual attack on the jurisdictional facts alleged by plaintiff. When ruling on a factual attack to the complaint, a court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts" without converting the motion into a motion for summary judgment. Stuart v. Colorado Interstate Gas Co., 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting Holt, 46 F.3d at 1003). To defeat defendant's Rule 12(b)(1) motion, "plaintiff must present affidavits or other evidence sufficient to establish the court's subject matter jurisdiction by a preponderance of the evidence." Southway v. Central Bank of Nigeria, 328 F.3d 1267, 1274 (10th Cir. 2003).

**B.**

"Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII." Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir. 1996) (internal quotation marks and citation omitted). To exhaust administrative remedies, a plaintiff must file a timely charge of discrimination with the EEOC. See 42 U.S.C. § 2000e-5(b). The Tenth Circuit has held that "[a] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." MacKenzie v. Denver, 414 F.3d 1266, 1274 (10th Cir. 2005). Thus, if the EEOC should not be reasonably

expected to investigate a plaintiff's claim or its underlying factual allegations, a court does not have jurisdiction to consider the matter.

Plaintiff's EEOC charge alleges that her employer discriminated against her on the basis of gender by subjecting her to a testing requirement that was not required of male employees and, impliedly, that refusal to waive the testing requirement was prohibited discrimination on the ground of disability as well as gender. Southwestern Bell allegedly ordered plaintiff to report for pole-climbing testing on October 19, 2006 and she was suspended on October 23, 2006. Dkt. # 35, Ex. 1. Plaintiff alleges that she was terminated on November 7, 2006. The charge does not mention any events occurring in 2002 nor does the charge suggest that plaintiff was subjected to harassment or a hostile work environment. The charge also does not mention that plaintiff engaged in protected activity for which her employer retaliated against her. Liberally construing plaintiff's EEOC charge, the Court finds that plaintiff has not exhausted her administrative remedies for a gender discrimination claim based on her 2002 suspension or a retaliation claim under Title VII or the ADA. MacKenzie, 414 F.3d at 1475.

Even if plaintiff had raised the 2002 suspension in her EEOC charge filed on December 5, 2006, her claim based on that suspension would be untimely. Under Title VII and the ADA, an aggrieved employee must file a charge with the EEOC within 300 days of the alleged unlawful discriminatory practice. 42 U.S.C. § 2000e-5(e)(1); Id. at § 12117(a); Proctor v. United Parcel Serv., 502 F.3d 1200, 1206 (10th Cir. 2007); Duncan v. Manager, Dep't of Safety, City and County of Denver, 397 F.3d 1300, 1310 (10th Cir. 2005). Failure to comply with this procedural prerequisite will bar a plaintiff's employment discrimination claim. Southwestern Bell allegedly suspended plaintiff in November 2002 for driving under the influence of alcohol outside of work, but plaintiff does not provide the exact date of her suspension. However, even if the Court were to give plaintiff

11

the maximum time possible and treat her suspension as effective on November 30, 2002, plaintiff needed to file a charge with the EEOC alleging discrimination based on the suspension no later than June 16, 2003. Although plaintiff argues that Southwestern Bell's prior conduct might be admissible under the continuing violation doctrine, the claims raised in her EEOC charge concern discrete acts of discrimination and she may not rely on this doctrine. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). Plaintiff failed to file a timely EEOC charge for these claims and she may not litigate any claim under Title VII based on an alleged 2002 suspension in this case.

**IT IS THEREFORE ORDERED** that Southwestern Bell Telephone Company's Motion to Dismiss Pursuant to Rule 12(b)(1) and Brief in Support (Dkt. # 31) and the Motion to Dismiss by Defendant AT&T Inc. and Brief in Support (Dkt. # 45) are **granted**. AT&T, Inc. is **dismissed** as a party to this action. Plaintiff's claim of gender discrimination, to the extent that she relies on a 2002 suspension, and her retaliation claim (Count Three) are **dismissed**.

**DATED** this 20th day of May, 2008.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT