# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

TONIA E. FISHER,                        )
                                        )
               Plaintiff,         )
                                        )
v.                                      )      **Case No. 07-CV-0433-CVE-FHM**
                                        )
SOUTHWESTERN BELL TELEPHONE             )
COMPANY,                                )
                                        )
               Defendant.         )

## OPINION AND ORDER

Now before the Court are the following motions: Defendant's Motion for Summary Judgment and Brief in Support Thereof (Dkt. ## 222, 228)[1]; Plaintiff's Motion for Relief Pursuant to Federal Rules of Civil Procedure 60(b)(1), (2), (6) and Brief in Support (Dkt. # 223); Plaintiff's Motion for District Court Judge to Review Magistrate's Rulings (Dkt. # 271); and Plaintiff's Motion to File a Surreply to Defendant's Reply in Support of It's Summary Judgment Motion and Request for an Expedited Ruling (Dkt. # 275).  Plaintiff has alleged claims of gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended, et seq. (Title VII), disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), and retaliation claims under Title VII and the ADA.  Defendant seeks summary judgment on each of plaintiff's claims.  In addition, plaintiff has requested reconsideration of an opinion and

---

[1]    Pursuant to General Order 08-11, defendant filed a sealed motion for summary judgment (Dkt. # 222) and a separate redacted version (Dkt. # 228) not under seal.  In this Opinion and Order, the Court will refer to the sealed version (Dkt. # 222) when citing defendant's motion and exhibits, as it contains complete copies of all evidentiary materials.

order (Dkt. # 133) partially denying a motion to amend and she seeks review of every discovery order entered by magistrate judges in this case.

## I.

Southwestern Bell Telephone Company (SWBT) hired Tonia E. Fisher in 1997 as a systems technician. Dkt. # 222, Ex. 1, at 21. SWBT required Fisher to take a written examination and a new employee safety training (NEST) course that included a safe pole climbing examination of an employee's ability to climb a non-step pole with hooks or gaffs. Fisher passed her written examination on the first attempt, and she subsequently passed the pole climbing test on her second attempt later in 1997. Id. Fisher claims that, during her tenure as a systems technician, she used an aerial ladder when climbing was required and she never climbed a pole using hooks. Dkt. # 255, at 1.

In October 1999, Fisher applied for a position as a customer service technician (CST) in SWBT's Oklahoma Installation and Repair Organization (Oklahoma I&R). Dkt. # 222, Ex.1, at 22. She was approved for a transfer to Oklahoma I&R later that month. The job description provided by SWBT states that a CST:

> Performs installation, testing and maintenance operations on pole line plant, cable sheath, conductors and terminations, service wire, carrier, power and telephone equipment and associated wiring; locates and corrects faults in such equipment and wiring; removes and rearranges cross connections on cable plant and on distributing frames when required; prepares records and reports as necessary; handles other generally associated operations and work assignments.

Id., Ex. 2-A, at 1. An essential function normally required for the position of CST is to "climb[] step and nonstep poles to a working height of a minimum of 18 feet and/or climb[] ladders and work[] aloft with hand tools." Id.

2

Fisher states that aerial work constituted about ten percent of her job, but she used a bucket truck or aerial ladder whenever aerial work was required. Dkt. # 255, at 1.  She states that she found these methods to be safer than climbing a pole with hooks, and she did not use hooks to climb a pole during her employment as a CST.[2]  Id. at 1-2 ("I never one time climbed a pole with gaffs while performing by job duties.").  Fisher states that she was meeting or exceeding her supervisors' expectations and received exemplary performance reviews from 1999 to 2001.  Id. at 2.  In 2002, SWBT suspended Fisher for four months without pay because Fisher failed to immediately report an alcohol-related driving offense she received outside  work.  Id. at 2.  She claims that she was unaware of a requirement to report driving violations occurring outside work and did not intentionally violate SWBT policy.  Id.  Fisher filed an internal grievance alleging that she was the victim of gender discrimination in Spring 2003, because she believed this disciplinary policy was not being applied equally to male and female employees.[3]  She claims that SWBT allowed her to return to work under the condition that she submit to random drug and alcohol testing.  Fisher viewed this requirement as a form of retaliation for reporting gender discrimination.  Id.

Fisher claims that she was "scrutinized and targeted for termination" following her return to work from the four month suspension.  Id. at 3.  In August 2005, Fisher requested and was

---

[2]    Fisher states that she attended a "rodeo" in 2004 and demonstrated certain physical skills, but she does not specifically state whether pole climbing was required at the rodeo. Dkt. # 255, at 3.  However, in her deposition, plaintiff states that she had not climbed a pole with hooks for at least nine years.  Dkt. # 222, Ex. 1, at 54.

[3]    The male employee who was allegedly treated differently was the president of SBC Oklahoma.  Plaintiff alleges that he was arrested for driving under the influence of alcohol and carrying a loaded firearm.  Id. at 2.  However, the summary judgment record contains no evidence suggesting that the subject SWBT policy was applied unequally to a male employee within Oklahoma I&R  or to any other similarly situated employee of SWBT.

3

approved for short-term disability leave.  Dkt. # 222, Ex. 4, at 1.  Fisher received treatment from a physician during her disability leave and, due to work-restrictions recommended by her physician, did not return to work until August 2006.  While she was on disability leave, she kept in contact with the Area Manager, Curtis James.  He advised Fisher that she might have to be retested on certain skills when she returned to work.  Dkt. # 255, at 3.  Fisher viewed this as a "red flag" that she would be sent for retraining upon her return to work and believed that SWBT would use retraining as an excuse to initiate the termination of her employment.  Id.  Fisher also states that she informed James that her physician "suspected" she had cancer, but additional testing showed that she did not have cancer.  Id. at 15.  Fisher does not state whether she notified James of her test results.  Fisher's physician lifted some of her work restrictions on August 21, 2006, and she returned to work in a temporary position through SWBT's Transitional Work Program.  Dkt. # 222, Ex. 1, at 47.  According to SWBT documents, the goal of the Transitional Work Program is "to provide a safe transition to full duty using modified or limited assignments immediately following . . . a short term disability . . . ."  Id., Ex. 4-A, at 1.  The Program is not designed for employees with long-term or permanent work restrictions but, instead, is intended to be a limited 60 day period of light or transitional work to return an employee to full functional capacity.  Id.  The 60 day time limit can be extended up to 150 days if the employee provides "documented medical information to indicate recovery is continuing."  Id.

On October 19, 2006, Fisher's physician released her to return to work without any restrictions.  Id., Ex. 5.  Fisher's immediate supervisor, Tareena Johnson, informed Fisher that she would resume her full responsibilities as a CST on Monday, October 23, 2006.  Id., Ex. 1, at 50.  Johnson informed Fisher that she would be required to demonstrate that she could safely remove and

replace a ladder from a truck and use hooks to climb a pole.  Id. at 51.  Fisher stated that she did not

have any hooks in her truck and had not carried hooks for some time.  Id.  Based on Fisher's return

to work from a lengthy absence and her admission that she did not have hooks, James was concerned

that Fisher had not used certain skills for some time and he recommended that Fisher attend a two-

week NEST course, beginning on Monday, October 23, 2006, to refresh her skills.  Id., Ex. 2, at 3.

This recommendation was approved by James' supervisor, Charles Ciskowski.  Id., Ex. 3, at 2.

Johnson told Fisher that she would be required to attend NEST in lieu of demonstrating the specific

skills initially identified by Johnson.  Dkt. # 255, at 5.  Fisher feared that SWBT was using NEST

as a means to initiate the termination process, and she asked Johnson to call James to verify what

impact passing or failing NEST would have on her employment.  Dkt. # 222, Ex. 1, at 51.  Johnson

called James while Fisher was present.  Id. at 52.  James allegedly stated that Fisher "might be given

another chance," but Fisher claims that it was unclear if passing NEST was a condition of continued

employment.  Id. at 52.  James states that it was not unusual to require an employee returning from

a long period of leave to re-attend NEST and recalled another CST, Orvel Merryman, a male, that

he required to re-attend NEST as a condition of continued employment.  Id., Ex. 2, at 4.  James also

states that the same condition was imposed on him when he was a CST and returned from leave.

Id.  From 2001 to 2008, Ciskowski states that he was aware of eight male CSTs, in addition to James

and Merryman, who were required to re-attend NEST before returning to work after taking leave.

Id., Ex. 8, at 3.

Fisher did not attend work on Friday, October 20, 2006.  Johnson and James called Fisher

at her home and discussed her concerns about attending NEST.  James explained that attending

NEST was a condition of Fisher's continued employment with SWBT, and it would be treated as

insubordination if Fisher refused to attend.  Id., Ex. 2, at 4.  Fisher acknowledged that she did not have hooks and had not climbed a pole for nine years, but she told James that she had never been required to climb a pole using hooks when performing her job as a CST.  Id., Ex. 1, at 54.  She expressed her view that climbing a pole with hooks was not safe and suggested that there were safer ways to perform aerial work.  Id.  James informed Fisher that she could be excused from NEST if she provided a doctor's note, but she would otherwise be expected to attend NEST on the following Monday.  Id. at 55; id., Ex. 2, at 4.

Fisher failed to report to NEST on October 23, 2006, and James called a meeting with Johnson, Fisher, and Fisher's union steward, Bob Martin.  Id., Ex. 2, at 4.  Fisher explained that she did not report to NEST because she believed that this requirement was discriminatory and was imposed in retaliation for an internal complaint she filed in 2003.  Id.  Fisher acknowledged that neither Johnson nor James were her supervisors in 2003.  Id., Ex. 7, at 1.[4]  James suspended Fisher without pay for insubordination and began to draft a separation proposal recommending Fisher's termination on October 24, 2006.  Id., Ex. 2, at 4-5.  He reviewed Fisher's personnel file and found that she had previously been suspended for refusing to follow instructions from a manager in January 2005.  Id. at 6.  Fisher states that she filed an internal grievance (SWBT hotline call) of gender discrimination with SWBT on October 22, 2006, the Sunday before the Monday NEST training, and she threatened to file a claim of disability discrimination with the Equal Employment Opportunity Commission.  Dkt. # 255, at 6.  She also contacted an attorney, Jeff Nix, who sent a

---

[4]     Plaintiff secretly brought an audio recorder to the October 23, 2006 meeting, and during discovery provided defendant with a handwritten transcript of the meeting. Dkt. # 255, at 6.  Defendant has attached a complete copy of the transcript to its motion for summary judgment.  See Dkt. # 222, Ex. 7.

letter to SWBT on October 27, 2006, notifying it that Fisher intended to file a charge of discrimination with the EEOC and any adverse employment action against Fisher would be construed as retaliation.  Dkt. # 222, Ex. 11-G, at 2.  James states that he did not learn of the internal grievance and Fisher's threats to file a charge with an outside agency until at least November 8, 2006 and he had already submitted a separation proposal to Ciskowski recommending Fisher's termination.  Id., Ex. 2, at 6.  On November 17, 2006, plaintiff received a phone call notifying her that no evidence of discrimination was found during an internal investigation.  Dkt. # 255, at 6.

On November 17, 2006, James and Ciskowski held a final meeting[5] with Fisher concerning her potential termination and asked if she wished to present additional information concerning her refusal to attend NEST.  Fisher did not provide any medical evidence suggesting that she was unable to perform the job of a CST and she denied that she was suffering from any disability on that date. Dkt. # 222, Ex. 1, at 58.  Fisher claims that Ciskowski referred to her "lengthy disability" as the basis for requiring Fisher to attend NEST.  Dkt. # 255, at 6.  James' notes from the meeting reflect that Ciskowski referred to a "lengthy disability," but the context of Ciskowski's statement was that "Tonia was directed to go to training after a lengthy disability and because by her own words she admitted she had not climbed in some time."  Dkt. # 222, Ex. 2-H, at 2.  Ciskowski also reminded Fisher that pole climbing is an essential duty of a CST's job and Fisher had admitted that "she doesn't climb poles."  Id.  Ciskowski added that "the most effective way to be taught to climb poles after returning from a disability is in a classroom environment with all the proper equipment and with a qualified instructor."  Id.  Fisher threatened to hold SWBT accountable for illegally terminating her employment, but she did not offer any medical evidence showing that she was

---

[5]        Plaintiff refers to this meeting as a "day in court" meeting.  Dkt. # 255, at 6.

physically unable to attend a pole climbing class.  Id.  At the conclusion of the meeting, Ciskowski

informed Fisher that she would be terminated for insubordination due to her failure to report to

NEST.

Fisher submitted a general intake questionnaire to the EEOC on December 5, 2006, alleging

that she was fired as a result of gender and disability discrimination and in retaliation for reporting

unlawful discrimination.  Id., Ex. 11-C.  A formal charge was drafted and signed by Fisher on the

same day, alleging claims of gender and disability discrimination only.  Id., Ex. 11-D.  Fisher

alleged that male employees were not required to retake NEST or a pole-climbing class after

returning from leave and she was treated differently than similarly situated male employees.  She

also alleged that SWBT perceived her to be disabled and she was terminated due to this mistaken

perception.  Id.

On August 8, 2007, plaintiff filed this lawsuit against defendant AT&T Corp., alleging

claims of gender discrimination, disability discrimination, and retaliation.  Dkt. # 2.  Plaintiff was

represented by counsel at that time, but her attorneys subsequently withdrew from their

representation of plaintiff and Fisher notified the Court of her intention to represent herself.  Dkt.

## 7, 8.  Plaintiff filed an amended complaint (Dkt. # 9) adding new factual allegations in support

of her claims.  AT&T Corp. sought dismissal of plaintiff's claims because it was not plaintiff's

employer.  Plaintiff conceded that she had named the wrong defendant, and she was granted

permission to file a second amended complaint (Dkt. # 25) naming the correct defendant.

In her second amended complaint, plaintiff named both AT&T Inc. and SWBT as

defendants.  SWBT moved to dismiss plaintiff's claims premised on an a 2002 suspension, as well

as plaintiff's retaliation claims under Title VII and the ADA because plaintiff did not exhaust her

8

administrative remedies for these claims.  AT&T Inc. sought dismissal of plaintiff's claims on the ground that the Court did not have personal jurisdiction over it.  Dkt. # 45.  Both motions were granted.  Dkt. # 55.  AT&T Inc. was dismissed as a party and plaintiff's retaliation claims and her claims of gender discrimination based on a 2002 suspension were dismissed.

On August 15, 2008, plaintiff filed a motion to amend (Dkt. # 78) requesting leave to file a third amended complaint reasserting her retaliation claims and new state law claims.  SWBT opposed plaintiff's motion on the grounds that the proposed amendments were untimely and futile. On October 21, 2008, the Court entered an opinion and order (Dkt. # 133) granting in part and denying part plaintiff's motion.  The Court found that the EEOC inadvertently omitted retaliation claims from plaintiff's original EEOC charge and the EEOC subsequently issued an amended charge to correct this oversight.  The amended charge issued by the EEOC on its own initiative was sufficient to exhaust plaintiff's administrative remedies for these claims.  Dkt. # 133, at 7-8.  Even though there was some delay in bringing these claims, plaintiff provided a reasonable explanation for the delay and was permitted to amend her complaint to add retaliation claims under Title VII and the ADA.  However, the Court found that plaintiff failed to offer a reasonable explanation for her delay in seeking to add state law claims.  Plaintiff's proposed state law claims were based on the same facts as her federal employment discrimination claims and her argument that she was unaware of remedies provided by Oklahoma law did not excuse her delay in seeking to amend.  Id. at 8-9. As an alternative holding, the Court found that it would be futile to allow plaintiff to amend to add state law claims, because Title VII and the ADA provided an adequate remedy for alleged discrimination and she could not state a claim under Burk v. K-Mart Corp., 770 P.2d 24 (Okla. 1989), based on Oklahoma law at that time.  Dkt. # 133, at 14-15.

On December 16, 2008, the Oklahoma Supreme Court answered certified questions submitted by the United States District Court for the Eastern District of Oklahoma concerning the availability of a <u>Burk</u> tort for alleged victims of age discrimination. <u>See</u> <u>Kruchowski v. The Weyerhaeuser Co.</u>, 202 P.2d 144 (Okla. 2008). In <u>Kruchowski</u>, the Oklahoma Supreme Court found that victims of age discrimination could bring a claim for discharge in violation of public policy under <u>Burk</u>. The Oklahoma Supreme Court did not directly address whether Title VII or similar federal statutes provided an adequate remedy. Instead, it held that "a plaintiff may pursue a state law claim for wrongful discharge in violation of public policy when the available remedies to the same class of employment discrimination victims are not uniform and evenhanded--regardless of whether the remedies originate under Federal or State law." <u>Id</u>. at 153. A <u>Burk</u> tort is available to a plaintiff when the available remedies under federal or state law are not "commensurate" with remedies provided by common law. <u>Id</u>.

On February 10, 2009, SWBT filed a motion for summary judgment on all of plaintiff's claims. Dkt. # 222. On the next day, Fisher filed a motion asking the Court to reconsider its opinion and order partially denying her motion to amend. Dkt. # 223. She reasserts her arguments concerning delay and claims that her lack of knowledge of the law provides an adequate explanation for any delay in filing a motion to amend. Fisher also seeks review of every discovery ruling entered by the magistrate judges in this case. Dkt. # 271. She claims that she was not aware of Fed. R. Civ. P. 72 and did not know that she needed to file an appeal within ten days of the magistrate judges' orders. This case was assigned to Magistrate Judge Sam A. Joyner until he retired on January 2, 2009. Judge Joyner entered an order (Dkt. # 123) granting in part and denying in part a motion to compel filed by Fisher. Thereafter, Magistrate Judge Frank H. McCarthy ruled on numerous

discovery motions filed by both parties.  See Dkt. # 230.  Plaintiff's motion to review all discovery orders entered by the magistrate judges has been re-docketed as an appeal of two specific written discovery orders (Dkt. ## 123, 230).

## II.

Plaintiff asks the Court to reconsider its opinion and order (Dkt. # 133) partially denying her motion for leave to file a third amended complaint (Dkt. # 79).  She argues that her proposed state law claims are not futile in light of Kruchowski and reasserts her argument that her lack of knowledge of state law remedies excuses any delay in filing a motion to amend.  Defendant responds that the Court correctly determined that plaintiff unduly delayed seeking leave to amend to add state law claims and plaintiff is not entitled to relief under Fed. R. Civ. P. 60(b).

Plaintiff requests relief under Fed. R. Civ. P. 60(b)(1), (2), and (6), but her motion is more properly characterized as a motion to reconsider.[6]  The Court treats plaintiff's motion to reconsider under Fed.R.Civ.P. 54(b), as the underlying opinion and order (Dkt. # 133) is not a final order or judgment.  See Raytheon Constructors, Inc. v. Asarco Inc., 368 F.3d 1214, 1217 (10th Cir. 2003). Plaintiff's motion does not address the appropriate standard of review for a motion to reconsider or a Rule 60(b) motion, but her motion implies the Court should reconsider its opinion and order under a de novo standard.  The Court may, however, call into play the legal standards applicable to a Rule 59(e) motion to alter or amend judgment when reviewing a motion to reconsider.  See, e.g., Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand LLP, 322 F.3d 147,

---

[6]     Plaintiff cites Rule 60(b) in the title of her motion, but does not provide a standard of review under Rule 60(b) or even cite Rule 60(b) within the body of her motion.  Instead, she argues that the Court should reconsider its opinion and order due to a misunderstanding of plaintiff's arguments or a misapplication of the law.

167 (2d Cir. 2003).  A motion to reconsider, like a motion to alter or amend judgment, should be granted only upon the following grounds: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice."  Servants of the Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000); see Adams v. Reliance Standard Life Ins. Co., 225 F.3d 1179, 1186 n.5 (10th Cir. 2000).  The Court will exercise its discretion to review plaintiff's motion under the standards applicable to Rule 59(e) motions.  A district court does not abuse its discretion if it refuses to reconsider arguments that have already been considered and rejected.  See Servants, 204 F.3d at 1009; Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir. 2003).  Reconsideration is "not available to allow a party to reargue an issue previously addressed by the court when the reargument merely advances new arguments or supporting facts which were available for presentation at the time of the original argument."  FDIC v. United Pacific Ins. Co., 152 F.3d 1266, 1272 (10th Cir. 1998) (quoting Cashner v. Freedom Stores, Inc., 98 F.3d 572, 577 (10th Cir. 1996)).

Plaintiff claims that her motion to reconsider is timely, because Kruchowski was decided on December 16, 2008 and her motion to reconsider is based, in part, on Kruchowski.  However, Kruchowski does not provide a sufficient explanation for plaintiff's delay in filing this motion.  Plaintiff filed her motion to reconsider on February 11, 2009, nearly two months after Kruchowski was decided.  In total, plaintiff waited almost four months after the Court entered its opinion and order on October 21, 2008 before filing a motion to reconsider.  Trial is less than a month away and it would prejudice defendant if plaintiff were allowed to amend her complaint so close to trial.  The Court also notes that plaintiff filed her motion to reconsider after defendant filed its motion for summary judgment, and this creates an inference that plaintiff is seeking leave to amend to bolster

her chances of surviving summary judgment.  If plaintiff strongly disagreed with the Court's opinion and order, she should have immediately raised her arguments in a timely motion to reconsider.  Dkt. # 133, at 9-10.  This is especially true when the Court denied plaintiff's motion to amend on the basis of undue delay.  Under the circumstances, a four month delay is an unreasonable period of delay to file a motion to reconsider or a Rule 60(b) motion, and untimeliness is a sufficient reason to deny plaintiff's motion.  See White v. American Airlines, Inc., 915 F.2d 1414, 1425 (10th Cir. 1990) (delay may be sufficient reason to deny a Rule 60(b) motion if plaintiff has not provided a justification for any delay).

Even if the Court were to reach the merits of plaintiff's motion to reconsider, the motion is meritless and the Court would not vacate its prior opinion and order.  The Court's opinion and order was not a first draft, and the Court will not revisit arguments that should have been presented before or have already been rejected.  The Court finds that its prior opinion and order resolved all of the issues raised in plaintiff's motion to reconsider, except plaintiff's argument that Kruchowski permits plaintiff to amend her complaint to allege a Burk tort.  However, plaintiff's proposed state law claims are futile regardless of Kruchowski based on the Court's findings in this Opinion and Order.  Plaintiff acknowledges that her proposed state law claims are based on the same facts as her federal law claims.  Dkt. # 255, at 8.  As will be discussed below, the Court has reviewed the evidence submitted by both parties and has found no genuine issue of material fact raising an inference that plaintiff was the victim of gender or disability discrimination.  See infra, at IV(C)-(E).  To state a Burk tort, a plaintiff must be able to allege that he or she was terminated for a reason that violates an Oklahoma public policy.  Vasek v. Bd. of County Comm'rs of Noble County, 186 P.3d 928 (Okla. 2008).  If plaintiff can not show that she was terminated as a result of gender or disability

13

discrimination, she can not establish that her termination violated Oklahoma public policy. Therefore, plaintiff's proposed state law claims would be futile and her motion to reconsider would be denied on its merits.

## III.

Plaintiff asks the Court to review every discovery ruling by the magistrate judges. Dkt. # 275. She states that she did not understand the difference between a district judge and a magistrate judge and was unaware of Fed. R. Civ. P. 72 and, due to her confusion, did not file a timely appeal of the magistrate judges' rulings. Id. at 1-2. She does not appeal a specific ruling by any of the magistrate judges who ruled on discovery matters, nor does plaintiff raise any specific grounds for challenging any discovery rulings in this case.

Rule 72(a) provides that a party may file objections to any non-dispositive order of a magistrate judge within ten days of receiving the order. The district judge must consider any timely appeal of a magistrate judge's order and may modify or set aside all or part of any order that is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a). A district court has discretionary authority to consider an untimely objection to a magistrate judge's order. See Allen v. Sybase, Inc., 468 F.3d 642, 658 (10th Cir. 2006). However, untimely appeals of a magistrate judge's order "frustrate[] the policy behind the Magistrate's Act, i.e., to relieve courts of unnecessary work" and result in a waste of judicial resources. Frontier Refining, Inc. v. Gorman-Rupp Co., Inc., 136 F.3d 695, 706 (10th Cir. 1998).

Plaintiff's motion seeking a review of every discovery ruling in this case should be denied due to the lack of specificity and the untimeliness of her motion. Plaintiff's motion fails to provide any notice of the basis of her appeal other than to state that plaintiff has "disagreed" with some

rulings by the magistrate judges. Dkt. # 271, at 1. This Court does not review a non-dispositive ruling of a magistrate judge unless a party raises a specific and timely objection to a particular ruling. Plaintiff's request for review of every discovery ruling entered by a magistrate judge is contrary to the spirit of Rule 72 and would be a waste of judicial resources. Plaintiff claims that she was not aware of Rule 72 until she recently "discovered" this rule when drafting her contributions to the agreed pretrial order. Dkt. # 271, at 2. This is similar to other arguments offered by plaintiff throughout this case concerning her unfamiliarity with the legal process due to her pro se status. Throughout the discovery process, plaintiff has filed motions to compel discovery and appropriate responses to defendant's discovery motions, and she has exhibited a working knowledge of the discovery process. This case has been pending for over a year and a half and plaintiff's repeated assertion that she is unfamiliar with the Federal Rules of Civil Procedure is no longer a valid excuse for plaintiff's untimely filings.[7] In any event, the Court has independently reviewed the written orders of the magistrate judges (Dkt. ## 123, 230) and the Court does not find that these orders were clearly erroneous or contrary to law. Quite to the contrary, the magistrate judges considered plaintiff's motions to compel and granted her requests for discovery when she was seeking relevant or unprivileged information. Thus, plaintiff's appeal of the magistrate judge's discovery orders should be denied.

---

[7]     Plaintiff's motion could not be treated as a timely appeal of any order entered by a magistrate judge in this case. The most recent ruling by a magistrate judge was issued on February 18, 2009, and plaintiff's motion was filed on March 18, 2009. Dkt. # 230. Most of the discovery rulings in this case were entered in September 2008, and the time to appeal those orders has long since passed.

**IV.**

Defendant seeks summary judgment on plaintiff's claims of gender discrimination, disability discrimination, and retaliation.   Plaintiff argues that genuine issues of material fact preclude summary judgment on each claim.   Consistent with Supreme Court and Tenth Circuit precedent, the Court will construe plaintiff's <u>pro</u> <u>se</u> pleadings liberally when ruling on defendant's motion for summary judgment.   <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972); <u>Gaines v. Stenseng</u>, 292 F.3d 1222, 1224 (10th Cir. 2002).   "Although '[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers,' . . . 'pro se parties [must] follow the same rules of procedure that govern other litigants.'" <u>Garrett v. Selby Connor Maddux & Janer</u>, 425 F.3d 836, 840 (10th Cir. 2005) (quoting <u>Nielsen v. Price</u>, 17 F.3d 1276, 1277 (10th Cir. 1994)).

**A.**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.   <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986); <u>Kendall v. Watkins</u>, 998 F.2d 848, 850 (10th Cir. 1993).   The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.   <u>Celotex</u>, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" <u>Id.</u> at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

## B.

Plaintiff requests leave to file a surreply in opposition to defendant's motion for summary judgment.  Dkt. # 275.  Plaintiff claims that defendant raised new arguments in its reply and she should be permitted to respond to those arguments, but she fails to specifically identify what new issues were raised in defendant's reply. Id. at 1.  Defendant objects to plaintiff's request and states that it did not raise any new issues in its reply.  It claims that plaintiff was looking for a way to supplement her response even before the reply was filed, and her request to file a surreply is an attempt to evade the Court's order prohibiting plaintiff from supplementing her response with additional argument.  Dkt. # 278, at 1-2.

Plaintiff claims that defendant's reply contains "misstatements of fact along with new issues" and plaintiff requests an opportunity to address the alleged misstatements and new issues.  If a party

raises new arguments or cites new evidence in a reply to a summary judgment motion, a district court can refuse to consider the new arguments or evidence or the district court can permit the opposing party to file a surreply.  Beaird v. Seagate Technology, Inc., 145 F.3d 1159, 1164 (10th Cir. 1998).  The Court has reviewed defendant's reply and finds that it does not raise any new legal or factual arguments that were not raised in defendant's motion for summary judgment.  Therefore, Beaird does not require the Court to authorize plaintiff to file a surreply.

Defendant has produced evidence showing that plaintiff was looking for a way to file a surreply even before the reply was filed, in order to supplement her response.  Defendant's reply was filed on March 23, 2009.  On March 18, 2009, defense counsel contacted plaintiff to determine if she had an objection to defendant's request for an enlargement of the page limitation for its reply. Dkt. # 278, Ex. 1, at 3.  Plaintiff had no objection "as long as defendant has no objection to my filing a surreply."  Id. at 2.  Defendant responded that it would be impossible to determine if a surreply was appropriate until the reply was filed.  Id. at 1.  Plaintiff stated that she believed defendant would be raising new issues if it needed a page extension and she noted that her "response brief itself wasn't as extensive as [she] had intended."  Id. Just 20 minutes after defendant filed its reply, plaintiff asked defense counsel if there was an objection to her request to file a surreply.  Id., Ex. 3, at 1.  The Court has already found that defendant's reply did not raise any new issues, and this evidence suggests that plaintiff's request to file a surreply is nothing more than an attempt to supplement her response.  The Court finds that it is unnecessary for plaintiff to file a surreply, and her motion (Dkt. # 275) is denied.

## C.

SWBT argues that plaintiff has not established a <u>prima facie</u> case of gender discrimination and she has no evidence that her termination for insubordination was pretextual.  Plaintiff responds that SWBT was looking for a reason to terminate plaintiff due to her gender, and her belief that she was required to retake NEST while male employees were not subject to the same requirement is sufficient to show that the stated reason for her termination was discriminatory and pretextual.

In this case, plaintiff does not have direct evidence of discrimination and the Court must use the burden-shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), to determine if plaintiff's claim of gender discrimination should be permitted to proceed to trial.  <u>Orr v. City of Albuquerque</u>, 471 F.3d 1144, 1149 (10th Cir. 2005).  To establish a <u>prima facie</u> case of gender discrimination, a plaintiff must prove that she: "(1) belongs to a protected class; (2) was qualified for her position; (3) was discharged despite her qualifications; and (4) was terminated 'under circumstances which give rise to an inference of discrimination.'"  <u>Swackhammer v. Sprint/United Management Co.</u>, 493 F.3d 1160, 1167 (10th Cir. 2007).  The key inquiry is whether plaintiff has shown that the adverse employment action "under circumstances giving rise to an inference of unlawful discrimination." <u>Kendrick v. Penske Transp. Servs., Inc.</u>, 220 F.3d 1220, 1227 (10th Cir. 2000).  The burden to state a <u>prima facie</u> case is simply a burden of production and it is not an onerous burden.  <u>Plotke v. White</u>, 405 F.3d 1092, 1099 (10th Cir. 2005).  If the plaintiff establishes a <u>prima facie</u> case, the burden shifts to defendant to provide a legitimate, non-discriminatory reason for its actions.  <u>Adamson v. Multi Community Diversified Servs., Inc.</u>, 514 F.3d 1136, 1145 (10th Cir. 2008).  Once the defendant has provided a legitimate, non-discriminatory

explanation for its actions, the burden shifts back to the plaintiff to show that the proffered explanation is pretextual. Etsitty v. Utah Transit Authority, 502 F.3d 1215, 1225 (10th Cir. 2007).

Defendant challenges plaintiff's prima facie case on the basis that plaintiff has not produced any evidence raising an inference of discrimination.  The parties do not dispute that plaintiff was a member of a protected class, was qualified for her job, and that she suffered an adverse employment consequence.  The Tenth Circuit has described a plaintiff's burden to establish a prima facie case as "so light that only the most baseless of claims fails to satisfy it." Zamora v. Elite Logistics, Inc., 478 F.3d 1160, 1171 (10th Cir. 2007).  In this case, plaintiff claims that she was required to undergo pole climbing training after returning from an extended disability leave, but she believed that climbing a pole with hooks was unsafe and unnecessary.  Dkt. # 255, at 11.  She claims male employees were not subject to this requirement and, even though defendant has produced evidence refuting plaintiff's assertion, plaintiff claims that defendant's evidence is "tainted."  Id. at 14. Plaintiff also suggests that SWBT did not hire many female CSTs, and this is further evidence of gender discrimination.  For purposes of this motion only, the Court assumes that plaintiff satisfied her burden to produce some evidence creating an inference of discrimination for her prima facie case.

Defendant has provided a legitimate, non-discriminatory reason for its decision to terminate plaintiff's employment.  Specifically, it states that plaintiff was fired for insubordination, because she refused to report to a required training course upon her return from an extended leave of absence.  Dkt. # 222, at 15.  "The defendant's burden is merely to articulate through some proof a facially nondiscriminatory reason for the termination; the defendant does not at this stage of the proceeding need to litigate the merits of the reasoning, nor does it need to prove that the reason

20

relied upon was bona fide, nor does it need prove that the reasoning was applied in a nondiscriminatory fashion." EEOC v. Flasher Co., Inc., 986 F.2d 1312, 1316 (10th Cir. 1992). The Tenth Circuit has described the defendant's burden at this stage of the proceedings as "exceedingly light." Zamora, 478 F.3d at 1165. Defendant's stated reason for terminating plaintiff, insubordination, is a legitimate, non-discriminatory reason explaining plaintiff's discharge, and defendant has satisfied its burden.

At this stage of the proceeding, the burden shifts to plaintiff to show that defendant's explanation for terminating plaintiff's employment is pretextual. Plotke, 405 F.3d at 1099; Salguero v. City of Clovis, 366 F.3d 1168, 1176 (10th Cir. 2004). "A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." Stinnett v. Safeway, Inc., 337 F.3d 1213, 1218 (10th Cir. 2003) (quoting Rea v. Martin Marietta Corp., 29 F.3d 1450, 1455 (10th Cir. 1994)). A plaintiff typically attempts to satisfy his or her burden by "revealing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" Mackenzie v. City & County of Denver, 414 F.3d 1266, 1278 (10th Cir. 2005) (quoting Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)). A plaintiff's "mere conjecture" that the employer's explanation is pretext is not a sufficient basis to deny a motion for summary judgment. Branson v. Price River Coal Co., 853 F.2d 786, 772 (10th Cir. 1988).

Plaintiff argues that SWBT was looking for a way to fire her and requiring her to attend NEST was excuse to expedite the termination of her employment. Dkt. # 255, at 5 ("I also knew defendant's stated reason 'safety concerns' were bologna."). She alleges that male employees were

not required to re-attend NEST after returning from leave and this creates an inference of discrimination. However, plaintiff's allegations of gender discrimination are not supported by any evidence and, instead, her vague allegations of gender discrimination are directly contradicted by the evidence in the summary judgment record. Defendant has produced evidence showing that at least ten similarly situated male employees were required to re-train after returning from leave. Dkt. # 222, Ex. 2, at 4; id., Ex. 8, at 3. In fact, one of plaintiff's supervisors, James, re-attended a pole climbing class after an extended period of leave. Id., Ex. 2, at 4. Although plaintiff claims that defendant's evidence is "tainted," she provides no evidence supporting this assertion. The evidence shows that re-training was regularly required of employees after a period of absence and that this requirement was applied in a gender-neutral manner. Plaintiff's allegation of discrimination based on a gender-biased requirement to re-take NEST is unfounded and does not create a genuine issue of material fact. Plaintiff further alleges that SWBT's hiring practices support her claim of gender discrimination, because SWBT did not frequently hire female CSTs. Dkt. # 255, at 9. This allegation is completely unsupported by any evidence. Plaintiff has not produced any payroll, human resources, or personnel records that would permit the Court to determine the gender of CSTs within Oklahoma I&R, and the Court declines to speculate about the gender of plaintiff's co-workers. There is no evidence suggesting SWBT discriminated against plaintiff on the basis of her gender, and plaintiff has not satisfied her burden to show that SWBT's reason for terminating her employement was pretextual. Thus, SWBT is entitled to summary judgment on plaintiff's claim of gender discrimination under Title VII.

**D.**

Plaintiff claims that defendant terminated her employment based on its mistaken perception that she was disabled due to a psychological impairment. Dkt. # 255, at 7. She also claims that defendant refused to provide her an accommodation that would allow her to perform the physical aspects of her job.[8] Id. at 4, 6, 10. Defendant responds that there is no evidence that it perceived plaintiff as substantially limited from performing a major life activity, and plaintiff can not establish a prima facie case of disability discrimination. Dkt. # 222, at 22. Defendant also argues that plaintiff's ADA claim based on an alleged failure to accommodate was not raised in her EEOC charge and is not supported by any evidence. Id. at 28.

Plaintiff's claim of disability discrimination is based on circumstantial evidence, and the Court must apply the McDonnell Douglas framework when ruling on defendant's motion for summary judgment. MacKenzie, 414 F.3d at 1273. To establish a prima facie case of disability discrimination under the ADA, a plaintiff must show that he or she "(1) is a disabled person as defined by the ADA; (2) is qualified, with or without accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of the disability." Justice v. Crown Cork & Seal Co., Inc., 527 F.3d 1080, 1086 (10th Cir. 2008). The ADA defines a disability as:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment . . . .

---

[8]    Plaintiff states that she may prove a "regarded as" ADA claim by showing that her employer refused to accommodate her apparent disability. Dkt. # 255, at 17.

42 U.S.C. 12102(1).  Plaintiff's claim falls under subsection (C), because she asserts that SWBT perceived her as disabled.  A person is perceived as disabled when "(1) a covered entity mistakenly believes that person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities."  Justice, 527 F.3d at 1086 (quoting Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999)).

Plaintiff claims that SWBT regarded her as having a psychological impairment that substantially limited her ability to perform the major life activities of emotional stability, eating, thinking, and working.  Dkt. # 222, Ex. 1, at 59.  In her deposition, plaintiff stated that she is not pursuing a claim based on an actual disability and she did not provide SWBT any evidence showing that she had an actual psychological impairment.  Id. at 58-59.  The regulations promulgated under the ADA provide a list of activities that constitute major life activities, but this list is not exhaustive. Kellogg v. Energy Safety Servs. Inc., 544 F.3d 1121 (10th Cir. 2008) ("Although driving is not one of the listed activities in the EEOC regulation, that does not end the inquiry because the regulation does not purport to give an exhaustive list.").  The list identifies "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working" as major life activities.  29 C.F.R. § 1630.2(j).  Plaintiff's claim that SWBT perceived her as substantially limited in her ability to work, if proven, would constitute a recognized major life activity under the ADA. The Tenth Circuit has construed the "caring for oneself" provision of the applicable regulation broadly, and activities such as eating, grooming, cleaning, and other general activities necessary to care for oneself fall within this category.  Holt v. Grand Lake Mental Health Ctr., Inc., 443 F.3d 762, 767 (10th Cir. 2006).  Although the Tenth Circuit has not determined whether eating and thinking

24

are major life activities under the ADA, the Court finds that such activities reasonably fall within the category of "caring for oneself" and, for the purpose of ruling on defendant's motion for summary judgment, assumes that eating and thinking constitute major life activities under the ADA. However, emotional stability, by itself, is not a major life activity. See Smoke v. Wal-Mart Stores, Inc., 208 F.3d 227, 2000 WL 192806, *3 (Feb. 17, 2000) ("An ability to cope with one's emotional states may be a necessary component of many major life activities, but it is not itself an 'activity'").[9]

The issue is whether defendant perceived plaintiff as being unable to perform a major life activity due to a psychological impairment. It is undisputed that plaintiff took short-term disability leave from August 2005 to August 2006. However, this does not establish as a matter of law that defendant perceived plaintiff as disabled, and the Court must consider the evidence, including the fact that plaintiff took disability leave, to determine if defendant perceived plaintiff as disabled at the time of her termination. See Berry v. T-Mobile USA, Inc., 490 F.3d 1211, 1219-20 (10th Cir. 2007) ("disability" is a statutory term of art and the employer's knowledge of a medical condition and a request for leave does not conclusively establish that an employer perceived an employee as disabled). The Court's focus is on the employer's subjective state of mind and plaintiff must show that her employer mistakenly believed that she was disabled. Justice, 527 F.3d at 1086.

Plaintiff argues that defendant regarded her as disabled due to a psychological impairment. She claims that her mental health began to decline after she returned from a four month suspension in 2003, and she exhibited symptoms such as crying, irritability, and weight loss. Dkt. # 255, at 3. She relies on Ciskowski's statement during the November 17, 2006 meeting referencing her

---

[9]     Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

"disability" as evidence that he perceived plaintiff as disabled.  Dkt. # 222, Ex. 2-H, at 2.  Plaintiff

denies that she discussed her medical history with SWBT after she returned to work.  Id., Ex. 1, at

58.  The summary judgment record shows that she repeatedly asked to return to work while she was

on disability leave and represented to defendant that she was able to work in some capacity.  Dkt.

# 255, at 3-5.  SWBT allowed plaintiff to return to work under its Transitional Work Program, which

suggests that SWBT viewed any restrictions on plaintiff's ability to work as temporary.  See

Delgado v. Tom Kelly & Assocs., Inc., 2006 WL 3762093 (N.D. Okla. Dec. 20, 2006) (plaintiff's

employer did not perceive the plaintiff as disabled from performing a major life activity, because

the evidence showed that the employer viewed any impairment as temporary).  By placing plaintiff

in the Transitional Work Program, defendant implicitly acknowledged that plaintiff could return to

work without any restrictions within 60 days.  This is supported by the fact that defendant removed

any restrictions on plaintiff on October 19, 2006 and asked her to resume all of the duties of a CST.

Plaintiff claims that, while she was on disability leave, she told James that she may have cancer.

Dkt. # 255, at 3.  However, her alleged impairments are psychological in nature, rather than

physical, and she offers no argument suggesting how a potential diagnosis for an undefined type of

cancer caused James to perceive her as having a psychological impairment.

Considering all of the evidence, including Ciskowski's statements about plaintiff's "lengthy

disability" and defendant's knowledge that plaintiff took disability leave, the Court will err on the

side of caution and find that plaintiff has identified a genuine issue of material fact on the issue of

defendant's perception of plaintiff as suffering from a psychological impairment.  The evidence

shows that plaintiff took disability leave from August 2005 to August 2006.  Ciskowski made at

least two references to plaintiff's "disability" during the November 17, 2006 meeting.  Viewed in

a light most favorable to plaintiff, these facts suggest that Ciskowski may have perceived plaintiff as having a psychological impairment, even considering the evidence defendant has produced showing that plaintiff was treated in the same manner as any other employee returning from an extended period of leave.  However, this genuine issue of material fact does not preclude summary judgment, because plaintiff must still show that defendant perceived her as substantially limited from performing a major life activity based on this disability.

Plaintiff has not shown that defendant perceived her as substantially limited from performing a major life activity.  To show that defendant perceived her as unable to perform a major life activity, she must produce evidence that defendant viewed her as having greater difficulty than the average person when performing the specified activity.  Doyal v. Oklahoma Heart, Inc., 213 F.3d 492, 497 (10th Cir. 2000).  Concerning plaintiff's allegation that defendant perceived her as unable to work, the Tenth Circuit has stated that it is "particularly difficult" for a plaintiff to prove that he or she was perceived as unable to work as defined by the ADA, and a plaintiff must show that he or she was "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities."  Justice, 527 F.3d at 1086 (quoting EEOC v. Heartway Corp., 466 F.3d 1156, 1162 (10th Cir. 2006)).  The evidence shows that defendant believed plaintiff could perform the essential duties of her job after October 19, 2006, and sent plaintiff for re-training to refresh her skills before returning to the field.  In addition, plaintiff has not produced any evidence suggesting that defendant perceived her as unable to perform a class or broad range of jobs as compared to an average person, and she may not rely on working as a major life activity underlying her ADA claim.  Likewise, plaintiff has not submitted any evidence showing that her supervisors viewed her as unable to

27

perform the major life activities of eating or thinking.  Plaintiff states that James was aware of her weight loss based on her reference to a potential diagnosis of cancer.  Dkt. # 255, at 15.   She also claims that James told her to "go get healthy" and he perceived her as unable to take care of herself. Dkt. # 222, Ex. 1, at 60.  However, James states that he was unaware of plaintiff's medical diagnosis and she never explained what caused her to lose weight.  Id., Ex. 2, at 5.  In her deposition, plaintiff acknowledged that weight loss can be caused by many conditions other than a psychological impairment.  Id., Ex. 1, at 64.  The Court finds that James' alleged knowledge of plaintiff's weight loss alone, without any other evidence, does not show that plaintiff was unable to perform the major life activity of eating.  Plaintiff has produced no evidence that would permit the Court to find that defendant perceived her as substantially limited in her ability to think, and this asserted major life activity does not support a "regarded as" ADA claim.  Plaintiff has not shown that defendant perceived her as unable to perform any major life activity, and defendant is entitled to summary judgment on plaintiff's ADA claim.

Plaintiff's final argument in support of her ADA claim is that defendant failed to accommodate her actual disability.   Defendant argues that plaintiff did not exhaust her administrative remedies for a failure to accommodate claim.  "Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII."  Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir. 1996) (internal quotation marks and citation omitted).  To exhaust administrative remedies, a plaintiff must file a timely charge of discrimination with the EEOC.  See 42 U.S.C. § 2000e-5(b). The Tenth Circuit has held that "[a] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC."  MacKenzie, 414 F.3d at 1274.  Thus, if the EEOC could

not have been reasonably expected to investigate plaintiff's failure to accommodate claim, this Court does not have jurisdiction to consider the matter. Plaintiff's EEOC charge plainly states that her claim under the ADA is based on a perceived disability. Dkt. # 222, Ex. 11-D ("I believe I have been discriminated against because . . . of being regarded as disabled, in violation of [the ADA]"). Based on the allegations of the charge, the EEOC should not have been expected to investigate a failure to accommodate claim, because such a claim is completely contradictory to plaintiff's "regarded as" ADA claim. To prove that defendant failed to accommodate a known disability, plaintiff would have to show that she suffered from a disability and requested an accommodation from defendant. See Tesh v. United States Postal Service, 349 F.3d 1270, 1275 (10th Cir. 2003) (an employee must come forward with evidence of a disability and place the employer on notice of his or her wish to be accommodated to state a failure to accommodate claim). Plaintiff has argued that defendant mistakenly perceived her as disabled and this is the basis for her ADA claim. The Court lacks jurisdiction over plaintiff's unexhausted failure to accommodate claim and will not allow plaintiff to proceed to a jury on this claim.[10]

---

[10]     Even if the Court had jurisdiction to consider this claim, it would not be reasonable to expect defendant to accommodate her alleged disability when she repeatedly claims that defendant mistakenly viewed her as disabled and she did not suffer from a disability. She claims that she refused to attend NEST due to safety concerns, see Dkt. # 255, at 5, but she did not provide any evidence to defendant of a medical or psychological condition that would have prevented her from attending NEST. Dkt. # 222, Ex. 1, at 58; id., Ex. 2-H, at 2. Therefore, she did not provide notice of a disability or request an accommodation due to a disability, and a failure to accommodate claim would fail as a matter of law.

**E.**

Plaintiff asserts that she was fired in retaliation for reporting gender and disability discrimination. She claims that she filed an internal complaint of discrimination in 2003 and this "spawn[ed] the beginning of the end of her career." Dkt. # 255, at 9. She also claims that she made an internal complaint of gender discrimination through an SWBT hotline on October 22, 2006, and her former attorney, Jeff Nix, sent a letter to defendant on October 27, 2006 threatening to file suit under the ADA if plaintiff was fired for insubordination. Dkt. # 222, Exs. 10, 12. She alleges that defendant retaliated against her by terminating her employment. Defendant responds that neither event establishes a causal connection between protected activity and an adverse employment action, and plaintiff can not establish a prima facie case of retaliation under Title VII or the ADA. Defendant also argues that plaintiff can not show that the stated reason for her termination, insubordination, is pretextual.

Under Title VII, it is unlawful for an employer to take any adverse action against an employee for filing a charge or reporting acts of alleged workplace discrimination. 42 U.S.C. § 2000e-3(a). To prove a prima facie case of retaliation, plaintiff must show that: (1) she engaged in protected opposition to discrimination; (2) her employer took an adverse employment action against her; and (3) there is a causal connection between the opposition and the adverse action. Stover v. Martinez, 382 F.3d 1064, 1071 (10th Cir. 2004). The law is clear that reporting workplace discrimination to the EEOC is protected behavior. Anderson v. Coors Brewing Co., 181 F.3d 1171, 1178 (10th Cir. 1999); McCue v. State of Kansas, Dep't of Human Resources, 165 F.3d 784, 789 (10th Cir. 1999). An employee may establish causation by showing that the adverse employment action occurred soon after the protected activity. Annett v. University of Kansas, 371 F.3d 1233,

30

1239-40 (10th Cir. 2004); Burrus v. United Tel. Co. of Kansas, Inc., 683 F.2d 339, 343 (10th Cir. 1982).  "Unless there is a very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation."  O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1252 (10th Cir. 2001).

In this case, plaintiff can establish the first and second elements of a prima facie case of retaliatory discharge under Title VII or the ADA.  Plaintiff has shown that she engaged in protected activity by filing an internal complaint of discrimination in 2003 challenging her four month suspension[11] and by raising allegations of gender and disability discrimination in October 2006. Plaintiff can also show that she suffered an adverse employment action, because she was fired on November 17, 2006.  However, plaintiff must produce some evidence showing a causal link between her protected activity and her termination.

Plaintiff claims that she filed an internal complaint alleging that her suspension for failing to report a driving offense in 2003 was actually pretext for gender discrimination.  She acknowledges that she was permitted to return to work in April 2003 and she did not file an EEOC charge based on this incident.  Dkt. # 222, Ex. 1, at 37.  For at least two reasons, plaintiff may not rely on her 2003 suspension as a basis for a retaliation claim.  First, she has produced no evidence that either James or Ciskowski were aware of her 2003 complaint.  See Petersen v. Utah Dep't of Corrections, 301 F.3d 1182, 1188 (10th Cir. 2002) ("An employer's action against an employee cannot be because of that employee's protected opposition unless the employer knows the employee has engaged in protected opposition."); Williams v. Rice, 983 F.2d 177, 181 (10th Cir. 1993) (a

---

[11]     Plaintiff's 2003 complaint raised only an allegation of gender discrimination and there is no indication that plaintiff believed her four month suspension was the result of disability discrimination.  Dkt. # 222, Ex. 1, at 30-31.

"plaintiff must show that the individual who took adverse action against [plaintiff] knew of the employee's protected activity" to sustain a retaliation claim). James was not plaintiff's supervisor when she made her internal complaint in 2003 and he did not learn of the complaint until he had already asked plaintiff to re-take NEST.[12]  Dkt. # 222, Ex. 2, at 6.  Likewise, Ciskowski states that he was unaware of plaintiff's 2003 complaint until he had already authorized plaintiff to retrain.  Id., Ex. 8, at 4.  Second, plaintiff's 2003 complaint is so remote in time from plaintiff's eventual discharge in November 2006 that it can not form the basis for a retaliation claim.  See Fye v. Oklahoma Corp. Comm'n, 516 F.3d 1217 (10th Cir. 2008) (period of two weeks between protected activity and termination was sufficient to establish causal connection); Haynes v. Level 3 Communications, LLC, 456 F.3d 1215, 1228 (10th Cir. 2006) (plaintiff's termination over seven months after engaging in protected activity was insufficient to prove causation for a retaliation claim).  A three year lapse between plaintiff's complaint and her termination is insufficient to support a causal connection between the two events and the 2003 complaint may not be used to independently establish a prima facie case of retaliation.

Plaintiff also claims that defendant terminated her in retaliation for her October 22, 2006 internal complaint (SWBT hotline call) of gender discrimination and an October 27, 2006 letter from an attorney raising allegations of disability discrimination.  Defendant responds that both of these events occurred after James directed plaintiff to report to NEST for retraining, and neither event may

---

[12]     Plaintiff states that James' fiancé worked for SWBT and handled plaintiff's claim for unemployment benefits during plaintiff's four month suspension. Thus, she infers that James should be treated as having knowledge of her 2003 complaint. Dkt. # 255, at 15. Plaintiff cites no authority to show that this type of inference is permissible, and the Court finds that plaintiff's vague assertion is insufficient to create a genuine issue of material fact concerning James' knowledge of her 2003 complaint.

be used to support a retaliation claim.  On October 19, 2006, Johnson informed plaintiff that she was required to report for NEST on the following Monday, October 23, 2006.  Dkt. # 222, Ex. 2, at 3-4; Dkt. # 255, at 5.  Plaintiff called in sick the following day, October 20, 2006, and notified Ciscowski of her concerns about the dangers of NEST.  Dkt. # 222, Ex. 1, at 54.  On October 23, 2006, plaintiff did not report for training and James called a meeting with plaintiff and her union steward to discuss plaintiff's failure to attend NEST.  Id., Ex. 2, at 4.  James suspended plaintiff on October 23, 2006 and began preparing a termination proposal on October 24, 2006.  Dkt. # 222, Ex. 2, at 4.  James states that he did not receive notice of plaintiff's internal complaint (SWBT hotline call) until November 8, 2006, and he did not learn of the letter from her attorney until November 13, 2006.  Id. at 5.

Based on the timing of plaintiff's October 22, 2006 hotline call and her attorney's October 27, 2006 letter, the Court finds that plaintiff has produced enough evidence to show a causal connection between her protected activity and her termination.  See Fye, 516 F.3d at 1228 (close temporal proximity between protected activity and adverse employment action is sufficient to show causal connection ).  As the Court has noted, defendant has stated a legitimate non-discriminatory reason for plaintiff's termination and the burden shifts to plaintiff to show that this reason was pretextual.

Plaintiff has not shown that defendant's stated reason for terminating plaintiff was pretextual.  The evidence shows that James ordered plaintiff to attend NEST before she engaged in any protected activity raising allegations of gender or disability discrimination in 2006, and it would not be reasonable to infer that James directed plaintiff to attend NEST in retaliation for any protected activity.   In addition, he was not aware of plaintiff's allegations of gender or disability

33

discrimination when he recommended her discharge.  Defendant's reason for terminating plaintiff's employment has remained constant, and there is no evidence suggesting any "weaknesses, implausibilities, inconsistencies, incoherencies" in defendant's legitimate, non-discriminatory explanation.  Mackenzie, 414 F.3d 1266.  The evidence shows that plaintiff was required to attend NEST after returning from leave in the same manner as any other SWBT employee, regardless of her gender or any perceived disability.  The record is clear that plaintiff personally believed climbing a pole with hooks with dangerous and she objected to any further training on this skill.  However, SWBT has submitted evidence that pole climbing was an essential job requirement and retesting of this skill was required equally of all employees returning from an extended period of leave.  Plaintiff has not demonstrated that a genuine issue of fact exists that would cast doubt on defendant's stated reason for firing her, and she can not show that her termination for insubordination was pretextual.  Therefore, summary judgment should be granted in favor of defendant on plaintiff's retaliation claims under Title VII and the ADA.

**IT IS THEREFORE ORDERED** that  Defendant's Motion for Summary Judgment and Brief in Support Thereof (Dkt. ## 222, 228) is **granted**.  A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Relief Pursuant to Federal Rules of Civil Procedure 60(b)(1), (2), (6) and Brief in Support (Dkt. # 223); Plaintiff's Motion for District Court Judge to Review Magistrate's Rulings (Dkt. # 271); and Plaintiff's Motion to File a Surreply to Defendant's Reply in Support of It's Summary Judgment Motion and Request for an Expedited Ruling (Dkt. # 275) are **denied**.

**IT IS FURTHER ORDERED** that all other motions (Dkt. ## 253, 285, 293) are **moot**.  All deadlines and scheduled dates are hereby **stricken**.

**DATED** this 6th day of April, 2009.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT